# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EMERGE ENERGY SERVICES LP, et al.,[1] | ) | Case No. 19-11563 (KBO) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| --------------------------------------------------------------- | | |
| MARKET & JOHNSON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Case No. 19-____ (KBO) |
| v. | ) | |
| | ) | |
| SUPERIOR SILICA SANDS LLC and | ) | |
| HPS INVESTMENT PARTNERS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Pursuant to 11 U.S.C. § 506(a) and Fed. R. Bankr. P. 3012 and 7001(2), the Plaintiff, Market & Johnson, Inc. ("M&J" or "Plaintiff") by and through its undersigned counsel, asserts as follows as its complaint against the Defendants, Superior Silica Sands LLC ("Superior" or "Debtor") and HPS Investment Partners, LLC ("HPS"):

## GENERAL STATEMENT

1.    M&J is a general contractor with perfected statutory or other liens against property of Superior located in Kingfisher County, Oklahoma, and Bexar County, Texas. In this proceeding, M&J seeks determinations that it is a secured creditor whose liens are (i) valid, perfected, and unavoidable liens against the property in question and (ii) superior to the liens, if any, held by HPS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Emerge Energy Services LP (2937), Emerge Energy Services GP LLC (4683), Emerge Energy Services Operating LLC (2511), Superior Silica Sands LLC (9889), and Emerge Energy Services Finance Corporation (9875). The Debtors' address is: 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas 76109.

and its principals against the same property such that M&J's liens constitute (x) "Senior Liens" or "Prior Permitted Liens" within the meaning of the final order approving DIP financing and the DIP financing agreement in this case and (y) "Other Secured Claims" within the meaning of the Debtors' proposed amended chapter 11 plan.

## JURISDICTION AND VENUE

2. The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), including Superior Silica Sands, LLC ("Superior"), each filed for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 15, 2019 (the "Petition Date"). Each of the Debtors have continued to operate their respective businesses and manage their respective properties as debtors-in-possession in accordance with 11 U.S.C. §§ 1107(a) and 1108.

3. This adversary proceeding has been filed pursuant to Fed. R. Bankr. P. 7001(2) and (9).

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and this is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

6. Pursuant to Local Rule 7008-1, M&J consents to the entry of final orders or judgments in this proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES AND GENERAL BACKGROUND

7. M&J is a Wisconsin corporation with its principal place of business in Eau Claire, Wisconsin.

8. Superior is a Texas limited liability company with its principal place of business at 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas, 76109.

9. HPS is a Delaware limited liability company whose principal place of business, upon information and belief, is located at 40 West 57th Street, 33rd Floor, New York, New York 10019. HPS serves as the agent for the PrePetition Lenders and the DIP Lenders (all as are identified below).

10. The Debtors, through the operations of Superior, engage in the mining, processing, and distribution of silica sand for use in hydraulic fracturing (or "fracking") of oil and gas wells. Superior has silica mining facilities in Wisconsin, Texas, and Oklahoma.

11. M&J is a construction management company. M&J contracted with Superior to provide construction management and general contracting services for mining facilities located in Bexar County, Texas, and Kingfisher County, Oklahoma.

12. Superior failed to pay M&J for work performed on these projects.

13. On January 3, 2019, M&J filed a lien affidavit in Bexar County, Texas, asserting a statutory and constitutional lien against the real estate and improvements associated with the Bexar County facility (the "Bexar Facility"). M&J subsequently filed amended lien affidavits. True and correct copies of the original and revised Texas lien affidavits (collectively, the "Texas Lien") are attached as Exhibit A and incorporated by reference.

14. As reflected in the Texas Lien, M&J's lien under Chapter 53 of the Texas Property Code and Article 16, Section 37 of the Texas Constitution secures payment of $4,850,087.00.

15. In addition to the amounts specifically identified in the lien affidavit, M&J is owed an additional $3,952,072.22 for work on the Bexar County facility which had not been previously billed.

16. The charges identified in the Texas Lien, and the additional charges identified above, relate only to work performed on the Bexar Facility.

17. On January 25, 2019, M&J filed a lien affidavit in Oklahoma asserting a mechanic's or materialmen's lien pursuant to 42 Okla. Stat. 141, *et seq.*, for work performed in constructing the dry plant portion of the Kingfisher County mining facility (the "Kingfisher Facility"). In its original lien claim, M&J asserted a claim for $3,220,478.00. M&J subsequently filed a revised affidavit asserting a claim in the amount of $3,957,088.00. True and correct copies of the original and revised Oklahoma lien affidavits (collectively, the "Oklahoma Lien") are attached as Exhibit B and incorporated by reference.

18. The charges identified in the Oklahoma Lien relate only to work performed on the Kingfisher Facility.

19. The Oklahoma Lien and the Texas Lien both represent services performed by M&J on behalf of Superior pursuant to contractual agreements between the parties.

20. The Oklahoma Lien and the Texas Lien both represent obligations which Superior has failed to pay, despite demand by M&J and repeated assurances by Superior.

21. Superior breached its agreements with M&J by failing to pay for the materials and services reflected in the Oklahoma Lien and the Texas Lien.

**THE BANKRUPTCY FILING AND POSTURE OF THE CASE**

22. On the Petition Date, the Debtors filed a variety of first-day motions, including a Motion (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens and Superpriority Administrative Expense Status, (C) Use Cash Collateral of Prepetition Secured Parties, and (D) Grant Adequate Protection to Prepetition Secured Parties; (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (III) Granting Related Relief [Doc. No. 20] (the "Financing Motion").

23. In the Financing Motion, Superior and the other Debtors asserted that they were parties to certain first and second lien obligations with HPS Investment Partners LLC as administrative and collateral agent on behalf of the "First Lien Prepetition Lenders" and the "Second Lien Prepetition Noteholders." Financing Motion, ¶ 5.

24. In the Financing Motion, Superior and the other Debtors (except for Emerge Energy Services GP LLC and Emerge Energy Services Finance Corporation) asserted they owed the First Lien Prepetition Lenders "not less than $66,710,000, plus accrued and unpaid interest and fees with respect thereto." Id.

25. In the Financing Motion, Superior and the other Debtors (except for Emerge Energy Services GP LLC and Emerge Energy Services Finance Corporation) asserted they owed the Second Lien Prepetition Noteholders "not less than $215,755,307, plus accrued and unpaid interest and fees with respect thereto." Id.

26. In the Financing Motion, Superior and the other Debtors asserted that the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders (collectively, the "Prepetition Lenders") were secured creditors holding liens on the "Prepetition Collateral" identified in the respective loan documents. Financing Motion, ¶ 6.

27. In the Financing Motion, the Debtors asserted that the Prepetition Collateral "comprises substantially all of the Debtors' assets." Financing Motion, ¶ 7.

28. In the Financing Motion, the Debtors sought approval of debtor-in-possession financing from the PrePetition Lenders who would, as to the post-petition loans, be identified as the DIP Lenders.

29. Jointly with other statutory lien claimants, M&J filed an objection to the Financing Motion. [Doc No. 134]. M&J asserted that its liens were superior to those of HPS on certain assets

and reserved all rights associated with its assertion of "Senior Liens" or "Prior Permitted Liens" as those terms were defined in the DIP financing agreement and order.

30. The final order granting the Financing Motion and approving the DIP financing agreement (the "Final DIP Order") provided that HPS, on behalf of the DIP Lenders, would receive junior liens on any collateral that was subject to "valid, perfected and unavoidable liens senior to the Prepetition Liens in existence immediately prior to the Petition Date." Final DIP Order, ¶ 13(a)(iii).

31. The DIP Financing Agreement, as approved, recognizes the possible existence of "Prior Permitted Liens" which would include certain valid, perfected, and unavoidable liens in favor of third parties. See § 7.2 of the DIP financing agreement and definitions of "Permitted Encumbrances" and "Prior Permitted Liens."

32. M&J's objection to the Financing Motion specifically preserved and reserved all issues as to lien priority and the extent or validity of M&J's lien rights, as well as any valuation issues.

33. Under the Final DIP Order, the Debtors' stipulations as to the validity and priority of the liens of the PrePetition Lenders are not binding upon M&J for a period of 75 days after entry of the interim order approving DIP financing (the "Challenge Period") so as to permit certain "Challenges" to be lodged. These Challenges would include objections to the stipulated valuation of assets as well as issues of lien priority. Final DIP Order, ¶ 26.

34. Under the Final DIP Order, the Debtors' stipulations as to the validity and priority of Prepetition Liens in the Prepetition Collateral are subject to Challenge if brought within the Challenge Period; otherwise, the stipulations become binding on third parties, including M&J.

35. M&J's complaint in this case constitutes a Challenge within the meaning of the Final DIP Order and has been brought within the Challenge Period in timely fashion.

36. On September 11, 2019, the Debtors filed their First Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code [Doc. No. 362] (the "Plan").

37. The Plan defines "Secured Claim" as a Claim that is secured by a Lien on property in which any of the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code. Plan Art. I.C.

38. The Plan defines "Other Secured Claim" as "any Secured Claim other than an Administrative Claim, DIP Credit Agreement Claim, Secured Tax Claim, or Prepetition Debt Claim." Id.

39. The Plan, as currently proposed, classifies Other Secured Claim as "Class 2." Plan Art. III.B.2.

40. The Plan provides that each holder of an allowed class 2 claim shall receive, at the election of the Debtors or Reorganized Debtors:

> (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the Holder of such Allowed Class 2 Claim shall have agreed in writing; (C) the Collateral securing such Allowed Class 2 Claim; or (D) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

41. On September 11, 2019, the Debtors filed the solicitation version of the Disclosure Statement for First Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its

Affiliate Debtors Under Chapter 11 of the Bankruptcy Code. [Doc No. 363] (the "Disclosure Statement").  In regard to the treatment of construction or mechanics' or materialmen's liens, the Disclosure Statement provides as follows:

> In some cases, vendors have asserted liens ("M&M Liens") to secure allegedly accrued and unpaid amounts owing under prepetition contracts with the Debtors. The Debtors are aware of the assertion of M&M Liens filed against various of the Debtors' properties at which the subject work and/or services were allegedly supplied. These properties include Debtor-owned property at Kingfisher, Oklahoma, Kosse, Texas, San Antonio, Texas, and Chippewa County, Wisconsin. The Debtors continue to examine the validity and perfection of such liens and their related claims, as well as the relative priority of any such valid and perfected liens relative to other valid and perfected liens on the affected properties. To the extent any valid and perfected M&M Liens enjoy a priority in respect of the affected property sufficient to render the related claims secured, those claims will be treated as Other Secured Claims under the Plan, while any deficiencies will be treated as General Unsecured Claims. The Debtors continue to reserve all rights in respect of the asserted M&M Liens. Disclosure Statement, Article II.C.3.

42. The Disclosure Statement further acknowledges and provides that as to the Oklahoma Facility, the Debtors are "not aware of the existence of any mortgage" in favor of the Prepetition Lenders. Disclosure Statement, Article IIC.1, 2, and 3.

## COUNT I:
## DETERMINATION OF THE VALIDITY, PRIORITY, AND EXTENT OF M&J'S LIEN ON KINGFISHER FACILITY

43. M&J asserts and realleges the allegations of paragraphs 1-42 above.

44. As indicated in the Financing Motion and the declarations filed by the Debtors in support of their first day motions, the Debtors commenced work on the Kingfisher Facility in late 2018. The Debtors also assert they "discontinued" work on the Kingfisher Facility in January of 2019 after incurring approximately $15.3 million in expenses, of which $7.3 million (including the sums owed to M&J) remain unpaid.

45. At the time the Debtors "discontinued" construction of the Kingfisher Facility, the dry plant was virtually complete and nearly operational.

46. As of the Petition Date, there were no mortgages or other liens recorded with the Kingfisher County Clerk in favor of HPS or the Prepetition Lenders on the Kingfisher Facility. A copy of relevant title searches performed on behalf of M&J are attached as Exhibit C and incorporated by reference.

47. On information and belief, the only other liens or purported liens recorded against the Kingfisher County mine are additional mechanic's liens whose claimants are as follows: (i) Pownall Services LLC (recorded April 5, 2019); (ii) Bollenbach Concrete (recorded on March 8, 2019); (iii) TMT Solutions (recorded on March 11, 2019); (iv) KC Electric (recorded March 21, 2019); (v) EnDeCo Engineers (recorded on April 4, 2019); and (vi) RB Scott Company (recorded May 28, 2019) (collectively, the "Additional Liens").

48. M&J's lien against the Kingfisher Facility was validly and properly perfected in accordance with Oklahoma law.

49. M&J's lien against the Kingfisher Facility is prior to, and superior to, any interest of HPS or the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders, as those terms are defined in the Final DIP Order.

50. M&J's lien against the Kingfisher Facility is a "Senior Lien" for purposes of the Final DIP Order.

51. For purposes of the Final DIP Order, the Kingfisher Facility constitutes "unencumbered property" on which the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders held no lien as of the Petition Date.

52. Any interest of HPS or the DIP Lenders in the Kingfisher County mine created as a result of the Final DIP Order is junior to M&J's lien.

53. M&J does not waive any right to challenge the validity, extent, or priority of the Additional Liens. However, to the extent any Additional Liens are in fact properly perfected and enforceable, such liens are likewise Senior Liens for purposes of the Final DIP Order.

54. On August 30, 2019, Superior filed Amended Schedules of Assets and Liabilities. [Doc. No. 281]. In its amended schedules, Superior asserted as follows:

> The indicated value of collateral supporting asserted mechanics liens related to the Kingfisher, Oklahoma facility is listed as "unknown". The Debtors estimate that the total value of such collateral is $441,000 in aggregate. The Debtors have not assessed the relative priority of such liens and, therefore, do not know the value of collateral supporting any particular lien.

Superior's Amended Schedules, Global Notes, ¶ 5(f).

55. Accordingly, Superior has asserted that the collateral securing M&J's lien (i.e., the Kingfisher Facility) is worth only $441,000.

56. Under 11 U.S.C. § 506(a), M&J holds a secured claim to the extent "of the value of such creditor's interest in the estate's interest in such property."

57. Under 11 U.S.C. § 506(a), such value "shall be determined in light of the purpose of the valuation and the proposed disposition of the use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

58. According to the Debtors' Disclosure Statement and Plan, Superior intends to retain the Kingfisher Facility.

59. Based upon information and belief, Superior seeks to find that for purposes of the Plan, M&J's Allowed Class 2 Claim in relation to the Kingfisher Facility is limited to some portion of $441,000.00.

60. The Debtors' proposed valuation of the Kingfisher Facility, and correspondingly of M&J's secured claim, is inconsistent with the proposed disposition and use of the property securing the claim.

61. Based upon information and belief, M&J contends that an appropriate valuation of the Kingfisher Facility, in light of the Debtors' proposed use and disposition, is far more in line with what has been expended upon construction to date (i.e., approximately $15 million).

62. Given the foregoing, there is an actual controversy between M&J and the Defendants as to the validity, priority, and extent of M&J's lien against the Kingfisher Facility.

63. A judicial determination of the validity, extent, and priority of M&J's lien on the Kingfisher County mine is necessary to the proper administration of these estates.

**COUNT II:**
**DETERMINATION OF EXTENT, VALIDITY, AND PRIORITY OF**
**M&J'S LIEN ON THE BEXAR COUNTY, TEXAS MINE**

64. M&J asserts and realleges paragraphs 1-63 above.

65. As of the Petition Date, there were three deeds of trust (the "Deeds of Trust") recorded against the Bexar Facility in favor of the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders.

66. M&J commenced work on the Bexar Facility shortly after the Deeds of Trust were recorded in the real property records of Bexar County.

67. In the performance of the services reflected in the Texas Lien, M&J installed "removables" on the real property associated with the Bexar Facility.

68. Under Texas law, a "removable" is an improvement that can be removed without material injury to the land, pre-existing improvements, or to the improvement itself.

69. Under Texas law, the holder of a properly perfected mechanic's or materialmen's lien is granted preference over the holder of any previously filed deed of trust as to any "removables" located on the real property.

70. M&J's Texas Lien was properly perfected and is enforceable.

71. M&J's Texas Lien therefore has priority over the Deeds of Trust as to any "removables" located on the real estate associated with the Bexar Facility.

72. M&J's interest in "removables" located at the Bexar Facility is a "Senior Lien" for purposes of the Final DIP Order.

73. M&J's lien against the Bexar Facility is prior to, and superior to, any interest of HPS or the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders, as those terms are defined in the Final DIP Order.

74. Any interest of HPS or the DIP Lenders in the Bexar Facility created as a result of the Final DIP Order is junior to M&J's lien on "removables."

75. The Debtors' amended plan does not specifically propose to pay M&J anything of value for its interest in "removables" at the Bexar Facility.

76. According to the Debtors' Plan, Superior intends to retain the Bexar Facility and all "removables" located on the property.

77. Under 11 U.S.C. § 506(a), M&J holds a secured claim in the "removables" to the extent "of the value of such creditor's interest in the estate's interest in such property."

78. Under 11 U.S.C. § 506(a), such value "shall be determined in light of the purpose of the valuation and the proposed disposition of the use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

79. The "removables" must be valued in light of Superior's proposed disposition or use of the property (i.e., retention).

80. Given the foregoing, there is an actual controversy between M&J and the Defendants as to the validity, priority, and extent of M&J's lien against "removables" located at the Bexar Facility.

81. A judicial determination of the validity, extent, and priority of M&J's lien on "removables" located at the Bexar Facility is necessary to the proper administration of these estates.

### COUNT III:
### DECLARATORY JUDGMENT

82. M&J J asserts and realleges paragraphs 1-81 above.

83. M&J's Oklahoma Lien and Texas Lien constitute valid, perfected, and unavoidable prepetition liens upon the Kingfisher Facility and the Bexar Facility, respectively.

84. The Oklahoma Lien is a "Senior Lien" within the meaning of the Final DIP Order as to the Kingfisher Facility.

85. The PrePetition Lenders did not hold a lien against the Kingfisher Facility as of the Petition Date.

86. Any liens granted to HPS or the DIP Lenders pursuant to the Final DIP Order are junior to M&J's Oklahoma Lien.

87. The Texas Lien is a "Senior Lien" within the meaning of the Final DIP Order on any removables, as defined under Texas law, which are located at the Bexar Facility.

88. M&J's interest in any removables located at the Bexar Facility is superior to the rights or interests of the PrePetition Lenders.

89. Any liens granted to HPS or the DIP Lenders pursuant to the Final DIP Order are junior to M&J's interest in any removables located at the Bexar Facility.

90. A judicial determination and declaration of the respective rights of the parties is essential to the proper administration of these estates.

91. A judicial determination and declaration of the priority, validity, and extent of M&J's lien, together with a determination of the value of M&J's interest in the interest of the Debtors in the collateral securing its claim, is required to determine the appropriate treatment of M&J's Allowed Class 2 Claim for purposes of the Plan.

WHEREFORE, M&J requests entry of judgment against the Defendants as follows:

A. Declaring that (i) M&J's lien on the Kingfisher Facility is a valid, perfected, and unavoidable prepetition lien; (ii) neither HPS nor the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders held a lien against the Kingfisher Facility as of the Petition Date; (iii) the Additional Liens are the only other liens or encumbrances which appear of record against the Kingfisher Facility; (iv) M&J's lien against the Kingfisher Facility is a "Senior Lien" within the meaning of the Final DIP Order and any lien of the DIP Lenders is junior and subordinate to that lien;

B. Determining the extent of M&J's lien in the Kingfisher Facility in accordance with 11 U.S.C. § 506(a);

C. Declaring that (i) M&J's lien on the Bexar Facility is a valid, perfected, and unavoidable prepetition lien; (ii) M&J's interest in all "removables" as defined by Texas law and located on the Bexar Facility was superior to the liens of the First Lien Prepetition Lenders and the Second Lien Prepetition Noteholders as of the Petition Date; (iii) M&J's lien against

"removables" located at the Bexar Facility is a "Senior Lien" within the meaning of the Final DIP Order and any lien of the DIP Lenders is junior and subordinate to that lien;

D.	Determining the extent of M&J's lien in the "removables" located at the Bexar Facility in accordance with 11 U.S.C. § 506(a);

E.	Awarding M&J pre- and post-judgment interest, attorneys' fees and expenses incurred in connection with this adversary proceeding, any contested matter before this Court, and any other proceeding relating to these matters; and

F.	Awarding such other and further relief as the Court deems equitable and proper.

Date:	October 25, 2019
	Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON** LLC

 /s/ E.E. Allinson III
Elihu E. Allinson III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
Email: zallinson@sha-llc.com

and

William E. Wallo, Esq.
**Weld Riley, S.C.**
3624 Oakwood Hills Parkway
Eau Claire WI 54701
Tel: (715) 839-7786
Fax: (715) 839.8609
Email: wwallo@weldriley.com

*Attorneys for Market & Johnson, Inc.*